## Jackson ex dem' Borden Wilber *against* Charlotte Brownell.

A sheriff's sale of lands under a *fi. fa.* is not void, because on a judgment confessed on a bond given by a man otherwise in debt, and the obligee declare he means to befriend the obligor and his family, one of whom is accepted as the purchaser under the execution, without paying the sheriff the consideration money, and the family of the obligor continue in possession as before. *Aliter* if it appear the bond was not for an actual debt.

IN EJECTMENT, the lessor of the plaintiff made title under a sheriff's sale, by virtue of a *fi. fa.* issued on a judgment against *George Brownell*, signed the 5th of *August*, 1801, in a suit, instituted before *October* term, 1800. The defendant relied on a sale, by virtue of a *fi. fa.* upon a judgment by confession, on a bond for 4000 dols. dated the 1st of *October*, 1800, to one *Bradford Richmond*, under whom she held.

Upon the trial it appeared, that *Richmond* himself, was a man of no property; but that he, having been deputed by several persons to recover debts due them from *George Brownell*, had taken from him a bond and warrant of attorney for the various amounts, on which the judgment by confession had been obtained, and had settled with the creditors of *Brownell*, for their respective demands, by giving his own responsibilities. That, however, on the day of sale, no money consideration was seen to pass from the defendant, who was the daughter of the obligor, to *Richmond*, he only acknowledging her bid, and giving a receipt for 4000 dols. for which sum, there was a report she had given her notes. That, from the conduct of *Brownell's* family at the vendue, there seemed to be no uneasiness of mind at the circumstance of his property being sold; on the contrary, they appeared anxious to bring as much under it as possible and that, since the period of sale, the family of the obligor

had resided on the lands in question, without any apparent alteration in the manner of working and conducting them, from that which was before observed. In addition to these facts, it was in testimony, that, previous to the auction, *Richmond* had expressed himself in a very friendly way, with respect to the obligor, by saying, he did not wish to injure him, and intended to give him a chance.

ALBANY,
August, 1805,

Jackson,
v.
Brownell.

From these circumstances, it was contended the sale was fraudulent, and the judge charged, that if the jury believed the bond and warrant of attorney were given to *Richmond*, upon an assurance, or understanding, that on the consequent sale which might take place, some favor or benefit should be shewn or allowed to *Brownell*, or his family ; or that there was any secret trust or confidence between *Brownell* and *Richmond*, for that purpose, it would be evidence of fraud against creditors ; and, although the amount for which the bond was given, was due, their verdict ought to be for the plaintiff, in consequence of which they so found.

It was now submitted to the court, whether the judge had not misdirected the jury, and the verdict, they in consequence rendered, ought not to be set aside ?

*Per curiam*, delivered by LIVINGSTON, J. Were it certain that the jury proceeded on the ground of *Richmond's* demand being fictitious, we should not disturb their finding. The probability, however, is, that they acted under a belief of *Richmond's* having promised, or that there was an understanding between the parties, that, in the disposal of his property, favor should be shewn to *Brownell* and his family. This would have been in conformity with that part of the direction of the learned judge, who tried the cause, which is supposed to be incorrect. Whether it were so or not, will now be examined. Such understanding, with respect to personal property, it is conceded, would have been fraudulent ; but it may well be doubted, whether the considerations, which govern cases of this kind, apply to real estates. These arrangements between debtor and creditor are not deemed fraudulent, because of any illegality in the transaction, as it regards the parties themselves, but on account of their tendency to deceive, and impose on third persons. It were a cruel policy in any code of laws, to interdict every species of favor to an

unfortunate debtor, under the penalty of vacating all securi-ties taken on those terms. On the contrary, a creditor may be as indulgent, and shew what favor he pleases, as the price of obtaining security, on land, for a doubtful debt : care must only be taken, that there be no secret understand-ing constituting a trust in the creditor, in derogation or con-trovention of the ostensible alienation, or the transfer will be deemed a cover, by which other creditors will not be prejudiced ; or, in other words, a change of estate will not, under such circumstances, be considered as having taken place. But nothing of this kind occurred here. It is not de-nied that the land passed, by the sheriff's deed to *Richmond*, nor pretended that he holds it in trust for *Brownell*, or any of his family, but only that he had no right to obtain judg-ment, on a promise to permit them to remain in possession, on terms of particular favor. In this promise, I perceive nothing illegal. If *Richmond's* debt were in danger, and he could not obtain judgment on his own terms, he must sub-mit to those of his debtor, who, in giving a new security, had a right to make the best bargain he could, so that others were not defrauded. What was to have prevented *Richmond's* taking a mortgage for his debt, on this very property, payable on the death of *Brownell*, and with an express agreement that the latter should enjoy the premises during his life, or for a shorter period ? or receiving an ab-solute deed, in extinguishment of his debt, under an agree-ment to give a lease immediately to *Brownell*, for one or more years, or as long as he might live, at a pepper-corn *per annum ?* Agreements of this nature can only be impeached on a supposition that there is no difference between such cases and that of *Twyne*. A moment's consideration must convince us of the contrary. Besides, that *Twyne* was pro-secuted on the 13th *Eliz.* *cap.* 5. for making and publishing a fraudulent gift of *goods*, not one of the badges of fraud, there relied on, exists here.

1st. The gift in that case was general, without except-ing apparel, or any thing of necessity. Here was no gift at all, but a judgment which could only be satisfied by a subsequent *public* sale, and of *so much property only*, as might be worth the debt.

2d. *Twyne's* debtor continued in possession, used the goods as his own, and thereby, *defrauded and deceived those* with whom he traded. This could not happen here. The defendant held the premises under *Richmond*, and paid rent. But if she had occupied them *gratis*, possession of real property is not considered as such evidence of title, as to give the occupant a credit in consequence of it. The party may be a tenant of the lowest grade, or the property may be incumbered beyond its worth, which is often the case, long after the mortgager's possession continues. The reason, therefore, why possession of goods (which is generally the only criterion of this species of property) after sale, is considered fraudulent, fails altogether when applied to lands.

3d. In *Twyne's* case, the gift was made *in secret*. This transaction was as public, as matter of record, and a sale at *auction* could make it.

4th. It was also made pending a writ. This does not appear to have been the case here. A debtor, after suit by one creditor, has undoubtedly a right, where no bankrupt laws interfere, to confess judgment to another, or to give him any other preference or security he pleases. All that appears here, is, that *Meeker's* suit was commenced before the third *Tuesday* of *October*, 1800, and that the bond to *Richmond*, was executed the first day of that month, so that the latter may have been prior to any *lis pendens* against *Brownell.*

The two last *indicia* of fraud in *Twyne's* case were, a trust between him and his debtor, and the gift's stating on its face, that it was made honestly, truly, and *bona fide.* Neither of these marks appear here.

My opinion, therefore, is that no assurance by *Richmond,* to shew favor to *Brownell*, or his family, as far as it respected *his real estate*, or any secret trust or understanding between them, *for that purpose*, can avoid the judgment or sale made under it. It will always be borne in mind, that a conveyance was not to be made by *Brownell* himself to *Richmond*, which would have put it in his power to aliene a valuable estate, for a trifling debt, but that it was to proceed, and that after public advertisement, from a

public, and sworn officer. At this vendue, any one could bid, and his other creditors might have prevented the land selling for less than its value. Not having done this, they have no right to complain of the price, or of the indulgence shewn to the former proprietor, or his family. There must be a new trial, with costs to abide the event of the suit.